

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-12-00045-CR
_____

LAWRENCE YOUNG, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 40550-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Dissenting Opinion by Justice Carter

OPINION

In the early morning hours of January 25, 2011, while Texas State Trooper Jacob Muehlstein was on patrol on Interstate 20 in Gregg County, Texas, he spotted a Nissan Altima (which he discovered was driven by Lawrence Young, Jr.) following a white Ford Mustang. Muehlstein stopped Young because he believed that the Altima he was driving was following the Mustang too closely. During this stop, Muehlstein observed that Young's eyes were red and glassy, his hands were shaking, his breath smelled of alcohol, and he was acting very nervous. The vehicle exhibited an unusually strong odor of air freshener. Young granted Muehlstein permission to search the vehicle, and he found three pounds of marihuana in the trunk.

Young was charged with possession of more than four ounces but less than five pounds of marihuana, a state jail felony. Young filed a motion to suppress the evidence found during the stop, arguing that the officer lacked reasonable suspicion to initiate the traffic stop. After a hearing, the trial court denied the motion to suppress, and Young subsequently entered a plea agreement.

On appeal, Young's sole point of error centers upon his contention that the trial court erred in denying his motion to suppress, maintaining that the officer lacked the reasonable suspicion to stop his vehicle. We affirm.

Standard of Review

We review the trial court's decision to deny Young's motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—

2

Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd).

Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche*, 10 S.W.3d at 332; *Guzman*, 955 S.W.2d at 89; *Graves*, 307 S.W.3d at 489. Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the denial of Young's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case. *Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing, because the ruling was based on that evidence, rather than evidence introduced later at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

*Did the officer have reasonable suspicion to stop Young's vehicle?*

In his sole point of error, Young contends that the trial court abused its discretion in denying his motion to suppress because "the record reflects that the officer instigated his detention of Mr. Young based upon a perceived violation of the Transportation Code by following another vehicle too closely."

Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention and must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997); *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.). Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Reasonable suspicion must be founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). An investigative stop that is reasonable at its inception may violate the Fourth Amendment because of excessive intensity or scope. *Davis*, 947 S.W.2d at 243 (citing *Terry v. Ohio*, 392 U.S. 1, 18 (1968)).

Following too closely is a violation of Section 545.062(a) of the Texas Transportation Code. Section 545.062(a) provides:

An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

TEX. TRANSP. CODE ANN. § 545.062(a) (West 2011).

Here, Muehlstein testified that the road was dry and the weather was cold. He testified that Young was following so closely that in the event the Mustang stopped, Young would have been unable to stop his car without colliding into the Mustang.[1] He also testified that he (Muehlstein) had been trained in judging time, speed, and distance of automobile traffic. Muehlstein stated that "[t]he vehicle following the Mustang was following at a distance that was unsafe." In addition to that during direct examination, the following exchange took place between the State and Muehlstein:

> Q. How close would you estimate that they were apart? Do you have any kind of estimation?
>
> A. Being it was that long ago I couldn't tell you an exact foot. I'm not qualified to tell you distance. But it would have been, from my experience when I looked at it, I would have recognized that the distance he was following was too closely.
>
> Q. In the academy or in the DPS training that you received, do you go over following distance and those type of things?
>
> A. Yes, ma'am. We receive training in regards to time and distances and speeds. So we're aware of, you know, when you -- because a lot of people just really don't realize how fast they're moving and how long it takes to actually stop or recognize a threat or something like that in the roadway. We do receive training in that.

---

[1]The record contains a video recording from the officer's dash camera; however, it does not contain evidence of a traffic violation.

5

Young primarily relies on *Ford v. State*, where the Texas Court of Criminal Appeals addressed a somewhat similar situation. 158 S.W.3d 488 (Tex. Crim. App. 2005). In *Ford*, Texas State Trooper Andrew Peavy stopped Ford's car for following too closely and during a search of the vehicle, the officer discovered fifty-five grams of marihuana hidden in the car's console. *Id.* at 490–91. Ford filed a motion to suppress, arguing that the officer lacked reasonable suspicion to have initiated the traffic stop. The trial court denied the motion and the court of appeals affirmed that decision.

At trial, Peavy testified that he saw Ford's car "following a white car, following too close." *Id.* at 491. Peavy was directly behind Ford's automobile when he made that judgment. *Id.* There was no other testimony relevant to Ford's driving. The trial court and the court of appeals held that Peavy's testimony presented sufficient articulable facts to form reasonable suspicion.

The Texas Court of Criminal Appeals reversed the trial court's order and ordered the motion to suppress be granted because the officer's statement was a mere conclusory opinion and because the record lacked specific articulable facts upon which to base reasonable suspicion. *Id.* at 493. While his training and experience could be useful, the court found that Peavy's training and experience were "insufficient to establish reasonable suspicion absent objective factual support." *Ford*, 158 S.W.3d at 494. The court noted that if it allowed an officer's opinion to suffice in place of specific facts, it would eviscerate *Terry*'s reasonable suspicion protection by removing the "reasonable" from the reasonable suspicion analysis. *Id.* at 493 (citing *Terry*, 392 U.S. 1). In a dissent, Judge Keller (joined by Judges Womack and Cochran) acknowledged that

6

there were scant background facts provided by the testifying officer which could have provided the basis of his conclusion that Ford was traveling too close and, thus, had violated the statute. Judge Keller opined, however, that neither the defendant nor the trial judge "requested greater specificity, and if greater specificity were not forthcoming, then the evidence would have been subject to suppression. Because greater specificity was not requested in this case, I would affirm the trial court's judgment." *Id.*[2]

In order to appreciate the finite differences that slight variations in fact situations can precipitate, one should compare *Ford* to *Stoker v. State*, 170 S.W.3d 807 (Tex. App.—Tyler 2005, no pet.), upon which the State relies. In *Stoker*, Trooper Fabbiani, a trooper with the Texas Department of Public Safety, stopped Stoker for following too closely (as is the case here and as in *Ford*). *Id.* at 809. Fabbiani testified that Stoker would not have been able to safely stop his vehicle without colliding with the vehicle he was traveling behind if that vehicle had stopped or slowed down. *Id.* at 813. He said that Stoker was "traveling at a high rate of speed" and was "right up on another car." *Id.* The Tyler Court of Appeals found that Fabbiani's testimony exceeded the mere "following too closely" testimony in *Ford*, and was therefore sufficient to establish reasonable suspicion. *Id.* One can infer that the Tyler court determined that the additional information provided from the witness stand in *Stoker* was sufficient to remove the

---

[2]This position would seem to have the effect of removing from the State some of its responsibility to present a background of testimony which would lay the premise for the admissibility of its evidence and place some of that burden on the defendant or the trial judge. In most circumstances, one would expect the trial judge to be neutral, not attempting to elicit information from a witness which would bear on the admissibility of the testimony the witness is presented to proffer. Further, one would also expect a defendant in an adversarial proceeding would hope that the State would fail to elicit the proper predicates to assure admissibility of adverse testimony.

7

reason provided for the traffic stop being a simple conclusory statement that the law was violated.

Our circumstance here lies neatly equidistant between the seemingly close factual circumstances of *Ford* and *Stoker*; although this case is not identical to either, it is difficult to place a figurative butter knife between the facts of this case and those of either *Ford* or *Stoker*.

As shown above, in this case, Muehlstein's testimony articulated a bit more background facts upon which he based his opinion that Young was violating the law than we find in the testimony in *Ford*. The recitation of these background facts upon which Muehlstein rested his opinion that Young was following too closely removed his testimony from the realm of a pure conclusory statement. Therefore, we find that the record contains sufficient facts to support reasonable suspicion for the traffic stop. We overrule Young's point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


DISSENTING OPINION

In *Ford v. State*, the police officer testified that Ford's vehicle was "following too close behind another vehicle." 158 S.W.3d 488 (Tex. Crim. App. 2005). This presented no factual detail to allow a neutral magistrate to evaluate Ford's conduct. Here, the testimony is very similar. The officer testified Young was following too close and would have been unable to stop

without colliding with the vehicle he was behind.  He specifically denied having any knowledge of the distance and stated he was not qualified to estimate it.  But he recited that "he was following too closely."

Except for the binding precedent from the Texas Court of Criminal Appeals, I could accept the premise that the officer's testimony was a shorthand rendition of the facts when he stated the vehicle was following too closely and would not be able to stop in time to avoid a collision.  But the majority in the *Ford* case rejected that idea even though it was proposed in the dissent.  *Id.* at 496 (Keller, P.J., dissenting).  I cannot see any substantive difference in the testimony that the defendant was "following too close" behind another vehicle and that the defendant was following too close and could not stop to avoid a collision.  Each of those statements is an opinion that the driver was violating the law without providing any factual details.  The Texas Court of Criminal Appeals found that allowing a police officer's opinion to replace specific facts removed the "reasonable" element from the "reasonable suspicion" requirement.  *Id*. at 493.  "Mere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis."  *Id.*  This case, like *Ford*, relies on mere opinions.

Finally, it appears the majority opinion gives equal weight to the Texas Court of Criminal Appeals opinion in *Ford* and the Tyler Court of Appeals opinion in *Stoker*.  While I am often persuaded by opinions from my colleagues in Tyler, their opinion is not binding precedent for the State of Texas, whereas the Texas Court of Criminal Appeals opinion is.

9

I respectfully dissent.


Jack Carter
Justice


Date Submitted:     October 4, 2012
Date Decided:       October 19, 2012

Publish

10