ACCEPTED
06-14-00138-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
12/31/2014 12:18:13 PM
DEBBIE AUTREY
CLERK

**NO. 06-14-00138-CR**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
1/8/2015 1:13:00 PM
DEBBIE AUTREY
Clerk

IN THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

TEXARKANA TEXAS

\* \* \* \* \* \* \* \* \* \*

JAMIE LEE BLEDSOE,
                    Appellant

VS.

THE STATE OF TEXAS,
                    Appellee

\* \* \* \* \* \* \* \* \* \*

Appealed from the 71st District Court
Harrison County, Texas
Trial Court No. 12-0374-X

_____

**ANDERS BRIEF IN SUPPORT OF
MOTION TO WITHDRAW AS COUNSEL**

_____

EBB B. MOBLEY
State Bar # 14238000
Attorney at Law
422 North Center St.-Lower Level
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289
ebbmob@aol.com

ATTORNEY FOR APPELLANT

JAMIE LEE BLEDSOE,
                              Appellant

VS.

THE STATE OF TEXAS,
                              Appellee

_____

**IDENTITY OF PARTIES AND COUNSEL**
Pursuant to T.R.A.P. 38.1(a)

_____

| | | |
|---|---|---|
| Appellant: | JAMIE LEE BLEDSOE<br>Inmate #1945574 | Wynne Unit TDCJ-ID<br>Huntsville, Texas 77320 |
| Appellant's<br>standby<br>trial counsel: | CHERYL COOPER-SAMMONS<br>Attorney at Law | 8907 State Highway 149<br>Longview, Texas 75605 |
| State's trial<br>counsel: | SHAWN ERIC CONNALLY<br>Assistant District Attorney | P. O. Box 776<br>Marshall, Texas 75670 |
| Trial Judge: | BRAD MORIN<br>District Judge | 200 West Houston, Ste 219<br>Marshall, Texas 75670 |
| Appellant's<br>counsel on<br>appeal: | EBB B. MOBLEY<br>Attorney at law | P. O. Box 2309<br>Longview, TX   75606 |
| State's counsel<br>on appeal: | TIMOTHY J. CARIKER<br>Assistant District Attorney | P.O. Box 776<br>Marshall, Texas 75670 |

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-11

POSSIBLE ISSUE NO. ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        Did the defendant receive an adequate warning about the dangers
        of self-representation?

        SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 12-13

POSSIBLE ISSUE NO. TWO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

        Did the trial court err in denying the defendant's motion to suppress
        evidence received from his motel room?

        SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

        ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .14-15

POSSIBLE ISSUE NO. THREE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

        Is appellant's current sentence void because the State improperly
        used two prior convictions to enhance his possible punishment?

        SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

        ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . .16-17

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# INDEX OF AUTHORITIES

**Cases**

*Anders v. California,* 386 U.S. 738; 87 S.Ct. 1396; 18 L.Ed. 2d 493 (1967) . . . . . . . .4

*Burgess v. State,* 816 S.W.2d 424, 428 (Tex.App.Crim. 1991) . . . . . . . . . . . . . . . . . . 13

*Carmouche v. State,* 10 S.W.3d 323 327 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . .14

*Dolph v. State,* 440 S.W.3d 898 (Tex.App. - Texarkana 2013, pet. ref'd) . . . . . . . . .13

*Graves v. State,* 307 S.W.3d 483, 489 (Tex.App. - Texarkana 2010, pet. ref'd) . . . . .14

*Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997) . . . . . . . . . . . . . . . . . . . .14

*High v. State,* 573 S.W.2d 807, 810-811 (Tex.Crim.App. 1978) . . . . . . . . . . . . . . . . 4

*Hutchings v. State,* 333 S.W.3d 917 (Tex.App. - Texarkana 2011, pet. ref'd) . . . . . . .16

*Rogers v. State,* 291 S.W.3d 148, 151 (Tex.App. - Texarkana 2009, pet. ref'd) . . . . . 14

*Ross v. State,* 32 S.W.3d 853, 856-57 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . .14

*Stafford v. State,* 813 S.W.2d 503 (Tex.Crim.App. 1991) . . . . . . . . . . . . . . . . . . . . .4

*Tawater v. State,* No. 06-14-00075-CR, slip op. December 10, 2014,
2014 Tex.App. LEXIS 13176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Villarreall v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996) . . . . . . . . . . . . . . . .14

*Waits v. State,* 56 S.W.3d 56 (Tex.App. - Fort Worth, 2001, no pet.) . . . . . . . . . . . . . 16

*Webb v. State,* 12 S.W.3d 808 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . .16

*White v. State,* 959 S.W.2d 375 (Tex.App. - Fort Worth, 1998, pet. ref'd) . . . . . . . . .16

*Young v. State,* 420 S.W.3d 139, 141 (Tex.App. - Texarkana 2012, no pet) . . . . . . . .14

**Statutes**

Penal Code §12.425(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Penal Code §12.35(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATEMENT OF THE CASE

This is an appeal from a conviction for burglary of a building, enhanced by two prior felony convictions. The jury found JAMIE LEE BLEDSOE guilty and assessed his punishment at 20 years confinement and a $10,000.00 fine. CR-224.

For clarity, THE STATE OF TEXAS will be referred to as "the State", and JAMIE LEE BLEDSOE will be referred to as "Defendant" or "Appellant."

## CERTIFICATE OF COUNSEL

The attorney's role as an advocate on appeal for his client requires that the attorney support the client's appeal to the best of the attorney's ability; however, no attorney is required to pursue on appeal any matter which is frivolous, without merit, or not supported by law or the introduced evidence as shown within the Clerk's Record and Reporter's Record. See *Anders v. California,* 386 U.S. 738; 87 S. Ct. 1396; 18 L. Ed. 2d 493 (1967); *Stafford v. State,* 813 S.W.2d 503 (Tex.Crim.App. 1991) and *High v. State,* 573 S.W.2d 807, 810-811 (Tex.Crim.App. 1978).

I, Ebb B. Mobley, the court appointed attorney on appeal for Appellant Jamie Lee Bledsoe, do hereby state that I have diligently searched both the Clerk's Record and the Reporter's Record and the exhibits in cause number 12-0374X of the 71st Judicial District Court of Harrison County, Texas. I have thoroughly reviewed and examined the facts and researched the applicable law of Texas and the United States, and I have painstakingly searched for any arguable issue. It is my professional opinion that, except as indicated within the Appellant's Brief prepared by me, no preserved error, no fundamental error, no harmful error and no reversible error occurred in this case. In conformity with the law applicable to appeals like this, I shall set forth written argument, authorities, and record references, in support of my legal opinion on the issues which could arguable sustain an appeal in this case.

**TRIAL ON THE MERITS**

The State called seven witnesses in its case in chief.

Bradley Horn

Brad Horn testified for the State. He was the manager of Fish & Still Equipment. 3 RR 99. He stated that when he got to work on July 16, 2012, he could tell that the building had been broken into in the back of the shop. He said that the door knob was busted through and the door and deadbolt were damaged. He said that he could tell that some property and the Stihl display had been taken. 3 RR 100. He said those items included chain saws, concrete saws and weed eaters. Mr. Horn testified that he reviewed the business's video surveillance system and was able to see a man coming through the shop up to the front and then walking out with weed eaters through the shop. He said the called the police both before and after he reviewed the video. 3 RR 101.

Randy Pritchard

Randy Pritchard testified for the State. Mr. Pritchard stated that he worked for the City of Marshall in the IT Department. He said that he managed the network for the city and assisted the police department in matters like videos and things. He said that he was asked to assist in a burglary investigation in July of 2012. He said he was asked to get the video from the Fish & Still and the Valero across the street. 3 RR 117.

<u>Daryl Griffin</u>

Daryl Griffin testified for the State. He stated that he was a sergeant with the Marshall Police Department. 3 RR 124. Sergeant Griffin testified that he received a call for a burglary at Fish & Still on July 16, 2012. He said that he and Sergeant Smith went together and they met with Officer Beck. He stated that Officer Beck walked them around the outside of the building showing them the surveillance cameras. They then went inside to see what had been taken. Sergeant Griffin testified that they then met Officer Killeen inside by the video camera. He confirmed that several items had been taken. 3 RR 125. He said that they reviewed the surveillance footage and saw a black male walk up to a camera with a ladder and put it up against the building and climb up towards the camera. He said that the person climbed back down and laid at the bottom of the ladder, then climbed back up. He stated that he was able to see the man's face and recognized the man. 3 RR 126. Sergeant Griffin identified the man on the surveillance video as Jamie Bledsoe. He said that he had known Mr. Bledsoe and spoken with Mr. Bledsoe previously. 3 RR 127.

Sergeant Griffin testified that he and Sergeant Smith next went to the La Quinta motel because they had outside cameras facing the Fish & Still parking lot. They did not recover any video at that time. 3 RR 132. He stated that on the Valero's video surveillance, they saw Mr. Bledsoe come into the gas station. 3 RR 133.

Sergeant Griffin testified that he went to all of the hotels in the area to see if Mr. Bledsoe had been staying or was staying at any of them the night of the burglary. 3 RR 134. He said that Mr. Baker, the manager of the Motel 6, informed him that Mr. Bledsoe had been renting room 108 out in the afternoons. Sergeant Griffin testified

that he then went to the office and was able to get a warrant for Mr. Bledsoe's arrest. He said that a day or two later he got a call from Mr. Baker letting him know that Mr. Bledsoe was in room 108 at that time. 3 RR 135.

Griffin testified that he went to the motel and knocked on the door to room 108. Sergeant Griffin said that Mr. Bledsoe looked out the window for a second and then opened the door and came outside. Sergeant Griffin testified that Officers Phillips and McGuire placed Mr. Bledsoe under arrest at that time.

Sergeant Griffin testified that he and Sergeant Smith went in and secured the room. He said that there was a shirt that was worn in the burglary laying on the floor. He said he left the room, shut the door and went to get a search warrant. 3 RR 136. The trial recessed for the day. 3 RR 142.

The next trial day Griffin repeated testimony that he received a call about a burglary that happened in Harrison County on July 5th. He said that he went to the location to investigate and reviewed the surveillance footage. He identified the man on the surveillance footage as Jamie Bledsoe. Mr. Griffin stated that he then got an arrest warrant and went to the Motel 6, Room 108. He said that he saw a shirt laying on the floor that fit the description of the shirt he saw in the surveillance footage. 4 RR 8. Sergeant Griffin stated that he then interviewed Mr. Bledsoe to get a search warrant for the room. 4 RR 9. He then went back to the room and collected the shirt and other evidence needed from the room. 4 RR 10. Sergeant Griffin testified that he obtained a second search warrant for Mr. Bledsoe's DNA to send with the shirt to the lab to compare to the DNA on the shirt. 4 RR 11. Sergeant Griffin stated that he and Sergeant Boyd interviewed Mr. Bledsoe at the station and videoed the interview. 4 RR 12.

## Larry Smith

Sergeant Larry Smith testified for the State. He was employed with the Marshall Police Department 4 RR 58. Sergeant Smith testified that on July 15, 2012 he received a call about a burglary at the Marshall Fish & Still. He stated that he and Sergeant Griffin drove out to the location. 4 RR 59. He said that they met Officer Beck at the crime scene and toured the perimeter and saw that a breech was made into the building. They then went inside the building to review the video camera footage. He identified Jamie Bledsoe as the man on the video footage. 4 RR 60. Sergeant Smith stated that he also identified Mr. Bleadsoe on footage from a Valero video camera. 4 RR 61.

## Sarah Hodges

Sarah Hodges testified for the State. She was a crime scene officer at the Marshall Police Department. 4 RR 75. She testified that she was asked to take possession of a shirt that had been swabbed for DNA evidence. She stated that she transported the shirt to the lab and picked it up from the lab. 4 RR 76. She also testified that she took a swab for DNA from Mr. Bledsoe. 4 RR 85.

## David Brake

Mr. Brake testified for the State. He said that he was self-employed and did contract work and occasionally did expert witness testimony. He said that he worked in the field of dentistry. On August 27, 2013, Mr. Brake was employed with Texas DPS as a serologist in the forensic DNA section as a forensic scientist. 4 RR 87. Mr. Brake testified that he received a shirt and some buccal swabs from the suspect and performed a screen for biological DNA. 4 RR 88. He collected trace evidence and

tested to indicate whether there was any blood on the shirt. He stated that from his presumptive testing there was no indication of blood on the shirt. 4 RR 90.

Chau Nguyen

Chau Nguyen testified for the State. She was a DNA analyst for the Texas Department of Public Safety in Garland, Texas. 4 RR 97. She testified that she analyzed a buccal swab from Jamie Bledsoe and a swabbing from a shirt from the suspect's hotel room. 4 RR 98. She stated that the DNA for the swabbing of the shirt was consistent with the mixture of the suspect, an unknown female individual, and another unknown individual. She testified that her conclusion was that Mr. Bledsoe could not be excluded as being a contributor to the swabbing of the shirt. 4 RR 100.

## DEFENSE EVIDENCE

The Defendant called six witnesses after the State rested. 4 RR 110.

Armarie Smith

Armarie Smith testified for the defense. Ms. Smith testified that Mr. Bledsoe was incarcerated with her son and she met him after her son got out of jail. 4 RR 112. She stated that she came out to Motel 6 to pay for a room for Mr. Bledsoe and went inside room 108 once or twice. She said that she never saw anything like weed eaters or saws in that room. She stated that she received a call from Mr. Bledsoe on July 23, 2012 asking her to go to Motel 6 and retrieve the rest of his property. 4 RR 113. She said that the police were in the room at the time so she went back to her car. 4 RR 114.

David Snow

Davis Snow testified for the defense. Mr. Snow testified that he and his wife operated My Friend's House, a homeless shelter in Marshall. He stated that he met Mr. Bledsoe in early 2013 and saw him once or twice a day. He said that Mr. Bledsoe worked for him at one time. 4 RR 120. When shown the surveillance footage from the Fish & Still, Mr. Snow could not identify the man in the video. 4 RR 121.

Caroline Snow

Caroline Snow testified for the defense. Ms. Snow stated that she was part owner of the My Friend's House. 4 RR 132. She stated that she met Mr. Bledsoe when she was working at ETBU and he was taking classes there. She said that she met him again around February 12, 2012 when he came to the My Friend's House and needed a place to stay. She estimated that she saw Mr. Bledsoe every day or two for four or five months. She said that they had a thrift store and Mr. Bledsoe worked there with her several times. 4 RR 133. She was shown the surveillance footage from the Fish & Still and could not identify the man in the footage. 4 RR 134.

Scott Beck

Officer Scott Beck testified for the defense. He stated that he worked for the Marshall Police Department. He said that he processed crime scenes. 4 RR 142. He said when processing a crime scene he first tries to document everything as it is when he arrives by using digital photography. After that he does a walk through to see if he sees anything he missed the first time. Then he goes back through a third time and actually collects the evidence to be processed. 4 RR 143. Officer Beck testified that on July 23, 2012 he received a call from Sergeant Griffin in reference to the hotel

room they were getting a warrant to search. 4 RR 148. He stated that when he arrived at the room, Detective Larry Smith, Detective Griffin, and Sergeant Scott Smith were present. He said that Detective Larry Smith and Detective Griffin left and only he and Sergeant Scott Smith remained in the front of the room. He said that the door was shut and no one went into the room until Officer Griffin got back with the search warrant. 4 RR 149.

Eddy Lacy

Eddy Lacy testified for the defense. Ms. Lacy testified that she had known Mr. Bledsoe for 25 or 30 years. Ms. Lacy could not identify the man in the Fish & Still surveillance video footage. 4 RR 176.

Scott Smith

Scott Smith testified for the defense. Officer Smith worked for the Marshall Police Department. 4 RR 184. He testified that on July 23, 2012 he was called to the Motel 6 to serve an arrest warrant. 4 RR 184-185. He stated that he was not the arresting officer. He said that once Mr. Bledsoe was in custody, he and a couple of other officers went into the room to secure it and make sure that no one was hiding inside. He said they then came back out and closed the door. 4 RR 185. Sergeant Smith stated that he and another officer stood outside the room to make sure that no one entered while they waited on the search warrant. 4 RR 186. He said that he stood outside while Officer Beck processed the scene. 4 RR 187.

Thereafter both sides rested and closed. 4 RR 188.

## POSSIBLE ISSUE NUMBER ONE

Did the defendant receive an adequate warning about the dangers of self-representation?

## SUMMARY OF THE ARGUMENT

The trial court's warning about the dangers of self-representation did not meet the requirements of due process.

## ARGUMENT  AND AUTHORITIES

## SUMMARY OF THE TRIAL EVIDENCE

## HEARING ON SELF REPRESENTATION 3 RR 7-12

Prior to voir dire Mr. Bledsoe advised the Court that he wished to represent himself.  3 RR 7.  The Judge advised Mr. Bledsoe that he would not get any leeway because he was representing himself,  and instructed him that he was responsible for voicing any objects he might have himself.  3 RR 8.  The Court asked Mr. Bledsoe if he understood that he had the right to counsel.   Mr. Bledsoe answered in the affirmative.  The Court also asked Mr. Bledsoe if he understood that he was bearing all of the responsibility for representing himself.  He again answered affirmatively. 3 RR 12.

## ANALYSIS

In this case Mr. Bledsoe has repeatedly filed pro se motions in the trial court, (CR-174) in this court, and in federal court.  Mr. Bledsoe has previousely filed numerous petitions for mandamus in this court and several civil actions in the Marshall Division  of the United States District Court for the Eastern District of Texas.

It cannot be denied that Jamie Lee Bledsoe has unequivocally and repeatedly expressed his desire to represent himself in this case.  The trial appointed stand-by counsel who conducted voir dire and periodically thereafter assisted Mr.

Bledsoe.  See  4 RR 57, and 4 RR 182.

Thereafter the trial court appointed different counsel to represent Mr. Bledsoe for a hearing on a motion for new trial and a subsequent appeal.  CR 227, 6 RR    .

This court laid out the parameters of self-representation and hybrid representation in *Dolph v. State,* 440 S.W.3d 898 (Tex.App. - Texarkana 2013, pet. ref'd).  There is no "formulaic questioning" on "particular script " for a trial court to assure himself that an accused who has asserted his right to self-representation does so with his eyes wide open.  *Burgess v. State,* 816 S.W.2d 424, 428 (Tex.App.Crim. 1991).  But the colloquy between the accused and judge must be more than a perfunctory "you'll be sorry you did this."

The trial court at bar failed to admonish Jamie Bledsoe of the nature of the charge and the enhancement counts, the range of allowable punishment, the possible defenses to the charges, and any mitigating circumstances.  Appointment of hybrid, or stand-by counsel, does not relieve the trial court from a probing, on the record evaluation of the defendant's competency, literacy, and complete understanding of the risks of embarking into the legal minefield of trial where even grizzled, gray-haired veteran criminal defense lawyers are oft found to have fallen short of effective representation.

Did the trial court err in denying the defendant's motion to suppress evidence recovered from his motel room?

## SUMMARY OF THE ARGUMENT

The defendant consented to the search of motel room 108, thus rendering any defects in the search warrant procedure interesting but harmless.

## ARGUMENT  AND AUTHORITIES

"A trial court's decision on a motion to suppress evidence is reviewed by applying a bifurcated standard of review".  *Graves v. State,* 307 S.W.3d 483, 489 (Tex.App. - Texarkana 2010, pet. ref'd) (citing *Rogers v. State,* 291 S.W.3d 148, 151 (Tex.App. - Texarkana 2009, pet. ref'd).  "Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, almost total deference is afforded to its determination of facts supported by the record."  *Young v. State,*  420 S.W.3d 139, 141 (Tex.App. - Texarkana 2012, no pet.) (Citing *State v. Ross,* 32 S.W.3d 853, 856-57 (Tex.Crim.App. 2000); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  The same deference to a trial court's rulings on mixed questions of law and fact is afforded if the resolution of those questions turns on an evaluation of credibility and/or demeanor.  *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).  The trial court's application of the law and determination of questions not turning on credibility and/or demeanor is review de novo.  *Carmouche,* 10 S.W.3d at 327; *Guzman,*  955 S.W.2d at 89.  Since all the evidence is viewed in the light most favorable to the trial court's ruling, the denial of Bledsoe's motion to suppress will be upheld if it was supported by the record and was correct under any theory of law applicable to the case.  See *Carmouche,* 10 S.W.3d at 328; *State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App. 1999).

Mr. Bledsoe questioned Officer Daryl Griffin closely about the mention of motel room 120 in the affidavit for a search warrant, whereas the warrant was later executed on room 108. 4 RR 48, 51.

Officer Griffin said the difference was a typographical error. Such an error might yield fruitful argument for questioning the legality of the search warrant and the affidavit in support.

But Mr. Bledsoe consented to the search of motel room 108 at the time of his arrest. See 2 RR 8, specifically State's Exhibit No. 2 as signed by Bledsoe and Armarie Smith, the person who had rented the room.

"Consent" trumps irregularity in the warrant procedure. The question of what exactly Mr. Bledsoe consented to (search for a colored shirt, or a briefcase full of important papers) would have been an excellent source of questioning for a record for appeal.

## POSSIBLE ISSUE NUMBER THREE

Is appellant's current sentence void because the State improperly used two prior convictions to enhance his possible punishment?

## SUMMARY OF THE ARGUMENT

Appellant attempted a voluminous, multifarious attack on his prior convictions, but he did not object to the introduction of these convictions into evidence before the jury.

## ARGUMENT AND AUTHORITES

Mr. Bledsoe has persistently objected to the State's use two of his many prior convictions to enhance punishment range in this case. But he did not object to the exhibits (SX 50 and 51) when they were introduced by the State. Cf. *Tawater v. State,* No. 06-14-00075-CR, slip op. December 10, 2014, 2014 Tex.App. LEXIS 13176 and *Hutchings v. State,* 333 S.W.3d 917 (Tex.App. - Texarkana 2011, pet. ref'd).

The record from the hearing on the motion for a new trial pin points Bledsoe's attack on two prior convictions. But his questions/testimony/argument about these convictions reveals more issues that are not developed or on which the record is simply silent. What happened in the course of pleas in cases No. 99-0124-X and 08-0177-X? 6 RR 9, 16. That would perhaps be a fertile topic for a post conviction application for a writ of habeas corpus. But the record at bar is incomplete at best and mostly silent about the strategy and action of effective counsel.

Mr. Bledsoe has provided a number of cases in support of his argument that his sentence is void because of improper pleading of his prior state jail felony convictions[1]. But those cases predate Penal Code §12.425(b) which provides as

---

[1] *State v. White,* 959 S.W.2d 375 (Tex.App. - Fort Worth, 1998, pet. ref'd); *Webb v. State,* 12 S.W.3d 808 (Tex.Crim.App. 2000); *Waits v. State,* 56 S.W.3d 56 (Tex.App. - Fort Worth, 2001, no pet.).

follows:

If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under Section 12.35(a), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree.

There does not yet appear to be any in depth discussion of this new statute in light of legislative history and prior decisions on prior similar statutes for repeat offenders.

On the face of the record in this case such consideration will be yet in the future.

Mr. Bledsoe should have taken the plea bargain offer of 8 years. With credit for time served thus far he would perhaps be on parole again on this Harrison County conviction.

## PRAYER

Wherefore, premises considered, Appellant counsel respectfully requests that his motion to withdraw be granted.

Respectfully submitted,

EBB B. MOBLEY
Attorney at Law
422 North Center St - Lower Level.
P. O. Box 2309
Longview, TX   75606
Telephone: (903) 757-3331
Facsimile: (903) 753-8289

/s/ Ebb B. Mobley
**EBB B. MOBLEY**
State Bar # 14238000

ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 3818 words according to the computer program used to prepare the document.

/s/ Ebb B. Mobley
EBB B. MOBLEY

## CERTIFICATE OF SERVICE

A copy of this brief was provided to Timothy J. Cariker, Assistant District Attorney, P.O. Box 776, Marshall, Texas 75670, on the 31 day of December, 2014, by e-file and to Jamie Lee Bledsoe, Inmate#1945574, Wynne Unit, 810 FM 2821, Huntsville, Texas 77349, by U.S. Mail return receipt requested.

/s/ Ebb B. Mobley
**EBB B. MOBLEY**