COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| ANDROD KEON STEWART, | | No. 08-14-00114-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 396th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC # 1294906D) |
| | § | |

# **O P I N I O N**

Androd Keon Steward appeals his conviction of possessing more than four grams but less than 200 grams of heroin, enhanced by two prior felony convictions. A jury found Appellant guilty, and the trial court found both enhancement paragraphs true and assessed Appellant's punishment at imprisonment for a term of 35 years in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

## **VALIDITY OF THE STOP**

In his sole issue, Appellant asserts that the trial court erred in denying his motion to suppress because the officers lacked reasonable suspicion for the stop.

### *Factual Summary*

The trial court conducted a pretrial hearing on Appellant's motion to suppress, but the parties re-litigated the suppression issue during trial on the merits. Consequently, our analysis will be based upon the evidence introduced at both the suppression hearing and trial. *See*

*Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996).

Jeffrey Jones is employed by the Tarrant County Sheriff's Office as a narcotics investigator. Jones received a telephone call from an informant who stated that an individual known as "Black" was distributing heroin in the area. Jones knew the identity of the informant but he did not reveal the name in his testimony and he did not specify whether the informant had given reliable information in the past.[1] According to the informant, a person could call Black and say he needed to meet him, and Black would tell him where to meet one of his "runners" or employees to buy heroin. The informant also provided Jones with Black's telephone number. On July 12, 2012, Jones called the number he had been given by the informant and told Black that he needed to meet. Jones identified himself using the name of a person who had previously purchased drugs from Black, and Black acted as though he knew him. Black told Jones to go to Loop 820 and Sun Valley. The phone disconnected before they finished the call. Black called Jones back and told him to go to the A & W restaurant located at Loop 820 and Sun Valley and look for a black car. During this call, Jones did not explicitly ask to purchase heroin, but he knew from the tip that Black was selling heroin, and he understood that by asking to meet he was using the code for buying heroin. Deputy Jones, Lieutenant Kevin Turner, and two other investigators went to the A & W restaurant to locate the car. They arrived about ten minutes after Jones spoke with Black and saw a black 2006 Chevy Cobalt in the parking lot. It was the only black car present at the A & W when the officers arrived. Turner went to the west side of Loop 820 where he could keep an eye on the vehicle. On two different occasions, Turner watched an individual drive into the parking lot, get out of the car, and approach the Cobalt. In each instance, the individual leaned on the open window, engaged in a hand-to-hand transaction

---

[1] There is evidence in the record that the officers did not want to reveal the identity of the informant.

2

with the occupants of the car, and immediately left the area without going to the drive-through or into the restaurant. Turner could not see what was being exchanged, but each transaction lasted five seconds or less. He testified that this type of activity is consistent with narcotics sales. The Cobalt left the parking lot and law enforcement officers maintained visual contact with the vehicle until Deputy Charles Wiesman stopped it. Wiesman walked up to the driver's side and made contact with the driver, Appellant. He immediately smelled the odor of marihuana coming out of the open driver's window. Officers searched the vehicle and found thirteen individually wrapped baggies of heroin and a small quantity of marihuana in the console.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). We must give almost total deference to the trial court's resolution of questions of historical fact and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex.Crim.App. 2011); *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex.Crim.App. 2013). Appellate courts review *de novo* mixed questions of law and fact that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Arguellez*, 409 S.W.3d at 662; *Wade v. State*, 422 S.W.3d 661, 667 (Tex.Crim.App. 2013)("We review *de novo* a trial judge's application of the law of search and seizure to the facts."). We review *de novo* whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion of criminal activity. *Arguellez*, 409 S.W.3d at 663.

### Reasonable Suspicion

An officer making an investigatory stop does not need to have probable cause to believe the suspect has engaged in criminal behavior because the Fourth Amendment demands only that

the officer have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979); *Young v. State*, 420 S.W.3d 139, 142 (Tex.App.--Texarkana 2012, no pet.). A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler*, 348 S.W.3d at 914. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Young*, 420 S.W.3d at 142. Consequently, the actual subjective intent of the arresting officer is disregarded, and the reviewing court considers whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 348 S.W.3d at 914. Even though the circumstances may seem innocent when considered in isolation, if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.* In assessing reasonable suspicion, a reviewing court looks to the totality of objective information known collectively to the cooperating officers. *Derichsweiler*, 348 S.W.3d at 915; *Arguellez*, 409 S.W.3d at 663.

A confidential informant can provide the requisite reasonable suspicion to justify an investigative detention so long as additional facts are present to demonstrate the informant's reliability. *Smith v. State*, 58 S.W.3d 784, 790 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). In this regard, "the informant's veracity, reliability, and basis of knowledge are highly relevant." *State v. Sailo*, 910 S.W.2d 184, 188-89 (Tex.App.--Fort Worth 1995, pet. ref'd). In a case involving the use of an informant, the court must consider the informant's reliability in analyzing the totality of the circumstances. *Smith*, 58 S.W.3d at 789. An informant's reliability can be established through evidence that the informant is known to the police and has provided credible

4

information in the past. *See Carmouche v. State*, 10 S.W.3d 323, 326 (Tex.Crim.App. 2000); *Smith*, 58 S.W.3d at 790; *see also Adams v. Williams*, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)(explaining that information obtained from informant who has been used before is stronger than anonymous tip). Additionally, reliability can be established by the presence of details relating not only to easily obtainable facts and conditions existing at the time of the tip, but also to future actions of third parties not easily predicted. *See Illinois v. Gates*, 462 U.S. 213, 241-46, 103 S.Ct. 2317, 2333-36, 76 L.Ed.2d 527 (1983); *Alabama v. White*, 496 U.S. 325, 329-30, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

*Appellant's Arguments*

Appellant contends that the officers did not have reasonable suspicion to stop his car because the phone call to "Black" amounted to nothing more than an unsubstantiated anonymous tip and the activity observed by the officers at the A & W was "otherwise lawful activity." There is no evidence in the record to support an inference or finding that the person known as Black was making an anonymous tip regarding criminal activity to the policy. To the contrary, all of the evidence in the record reflects that the police were investigating Black for distributing heroin.

This investigation began when a confidential informant told Investigator Jones that a man known as "Black" was distributing heroin in the area. The informant also gave him Black's phone number. Jones called that number and spoke to Black while identifying himself using the name of someone who had previously purchased drugs from Black. Black acted as though he knew Jones. Jones told him only that he needed to meet, which Jones understood from the informant to be code for buying heroin from Black, and Black told him to go to a specific location and to look for a black car. Jones and other officers went to the A & W and they found one black car in the parking lot. The officers watched the black car for a while and observed

what they believed, based upon their training and experience, to be two separate drug transactions involving the occupants in the black car.

The record before us contains evidence demonstrating that the officers corroborated important details of the tip indicating criminal activity on the part of the occupants of Appellant's black Cobalt. Significantly, the tipster accurately predicted that Black would give Deputy Jones a location where he could purchase heroin from Black's runners or employees. The officers corroborated that aspect of the tip by traveling to the location and observed what they believed based upon their training and experience to be drug transactions. Thus, the officers independently corroborated the tip with respect to future actions by third parties. Based upon the totality of the circumstances, we conclude that the combination of the corroborated tip and the officers' observations of what they believed to be drug transactions established reasonable suspicion for the investigative detention of Appellant's vehicle and its occupants. *See Sailo*, 910 S.W.2d at 189-90; *see also White*, 496 U.S. at 331-32, 110 S.Ct. at 2417 (where police received anonymous tip that woman was carrying cocaine, reasonable suspicion existed where police independently corroborated details of the anonymous tip, including the description of the woman, the timeframe in which the tipster predicted she would leave the apartment building, the car she would be driving, and the hotel where the woman would go); *Glenn v. State*, 967 S.W.2d 467 (Tex.App.--Amarillo 1998), *pet. dism'd*, 988 S.W.2d 769 (Tex.Crim.App. 1999)(reasonable suspicion existed where anonymous informant told police he had seen drugs in defendant's car and predicted defendant would leave his apartment in vehicle within a couple of hours, informant's information was consistent with other information known to officers about defendant from other informants and another police officer, and officers corroborated every aspect of tip except presence of drugs before detaining defendant). We overrule the sole issue on appeal and

affirm the judgment of the trial court.

September 16, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)