

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00081-CR

_____


KELVIN HUTCHINGS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 38754-A



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

Just how and when Longview Police Officer James Seale first directly saw the assault rifle involved in this case is a matter of dispute. In the end, however, Kelvin Hutchings, Jr., was convicted in a bench trial for being a felon in unlawful possession of the rifle.[1]  *See* TEX. PENAL CODE ANN. § 46.04 (Vernon Supp. 2010).

In five points of error, Hutchings challenges the sufficiency of the evidence, the trial court's failure to approve a waiver and consent regarding proof of his prior felony conviction, and the trial court's actions relative to Hutchings' motion to suppress. We affirm the trial court's judgment because (1) sufficient evidence supports the judgment, (2) approval of a waiver and stipulation was not necessary, and (3) allowing police evidence regarding the firearm was harmless, even if error.

*(1)    Sufficient Evidence Supports the Judgment*

Hutchings challenges the sufficiency of the evidence to prove two elements of the crime.[2] He claims the evidence is insufficient to prove either that what he possessed was a firearm, as contemplated by the statute, or that he was a convicted felon.

---

[1]Hutchings was also tried for aggravated assault, but the trial court acquitted Hutchings of that charge. For his conviction, Hutchings was sentenced to confinement for nine years and one month.

[2]In points of error one and two, Hutchings claims the evidence is legally and factually, respectively, insufficient to support the trial court's judgment. We no longer review for factual sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 894–95, 902 (Tex. Crim. App. 2010) (4-1-4 decision) (where plurality and Judge Womack agreed that *Jackson v. Virginia* legal-sufficiency standard is only standard reviewing court should apply in determining whether evidence is sufficient to support each element of criminal offense).

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). To prove unlawful possession of a firearm by a felon, the State was required to prove that Hutchings (1) possessed a firearm (2) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." TEX. PENAL CODE ANN. § 46.04(a)(1). "[T]o support a conviction for possession of a firearm, the State must show (1) that the accused exercised actual care, control, or custody of the

3

firearm, (2) that he was conscious of his connection with it, and (3) that he possessed the firearm knowingly or intentionally." *Nguyen v. State*, 54 S.W.3d 49, 52 (Tex. App.—Texarkana 2001, pet. ref'd).

In a trial before the court, the State presented three witnesses: Tamaria Bell, Adrian Beauchamp, and Seale. Beauchamp was the girlfriend of Hutchings' brother and lived in the same duplex with Hutchings and his girlfriend at 100-A Thelma Court in Longview. The evening of September 23, 2009, Bell had brought another couple to the duplex with the idea that they might move in with Hutchings, his brother, and their respective girlfriends. At trial, Bell and Beauchamp identified Hutchings and said they saw him with a gun on the night in question. Bell said the gun had a knife or bayonet attached. Both witnesses claimed not to know much about guns and gave flawed descriptions of the gun, which was not admitted into evidence at trial. Shortly after wielding the rifle, Hutchings left. Then police arrived and were directed toward the building where Hutchings lived. Seale saw an individual with a rifle, silhouetted in the window. The silhouetted person, not Hutchings, exited the home. Seale said that, in the house, he found a "weapon," which he described as "an SKS with a wood stock and full gripe [sic], it had what appeared to have a thirty round magazine. It was loaded with twenty rounds." The SKS, with a bayonet attached, was leaning against a couch.

Two witnesses, Bell and Beauchamp, knew Hutchings and identified him in court. Both women said they saw Hutchings with a gun. Bell said Hutchings told her that, if she did not move

4

her car, he would "shoot it up." She later saw him pull a "big gun" out of the trunk of a car. Hutchings makes much of Bell's description of the weapon. She initially said the gun "had a musket on the end of it." For the sake of context, we provide the relevant section of Bell's testimony:

Q      [State]   All right.   Do you know anything about guns?

A      [Witness]   No.

Q      Well, there's nothing wrong with that.   Did it look like a pistol, like something you would hold in your hand, or a bigger gun, or -- ?

A      It looked like something that somebody in the army would have.

Q      All right.   And did it have anything attached to it?

A      Is it called a musket, I believe.   It looks -- looked like it had a musket on the end of it.

Q      You mean like a knife?

A      Like a knife, yes.

Q      Like a bayonet?

A      Bayonet, yes.

[Defense attorney]:   I object to leading, Your Honor.

THE COURT:   Don't lead.

[State]:   All right.

Q      Could you see that -- ? [sic]

5

A Yes.

Q -- when you were sitting in your car?

A Yes, I could see the whole gun.

We disagree with Hutchings' argument that the State "did nothing to disprove the 'musket' part of Ms. Bell's testimony." Bell said she did not know about guns and clarified, albeit after leading questions, that she was talking about a gun with a knife attached, or a bayonet. Although Hutchings does not directly argue this, he seems to suggest Bell's initial description could invoke the exception to the statutory definition of firearm for items that are antiques or curios.[3] The State is not required to prove a firearm is not an antique or curio firearm or replica thereof. *Jackson v. State*, 575 S.W.2d 567, 569 (Tex. Crim. App. [Panel Op.] 1978). If Hutchings wished to present this theory, it would have been an affirmative defense for him to raise and prove. *See Cantu v. State*, 802 S.W.2d 1, 2 (Tex. App.—San Antonio 1990, pet. ref'd). He did not present this argument to the trial court. *See generally* TEX. R. APP. P. 33.1 (preservation of error).

Bell also said that she went to a neighbor's house to call the police. Through a window, she watched Hutchings go into "the house," which from the context of her testimony seems to indicate the duplex he shared with his brother and their girlfriends. She did not see what

---

[3]"Firearm" does not include a firearm that may have, as an integral part, a folding knife blade or other characteristics of weapons made illegal by this chapter and that is:
  (A) an antique or curio firearm manufactured before 1899; or
  (B) a replica of an antique or curio firearm manufactured before 1899, but only if the replica does not use rim fire or center fire ammunition.

TEX. PENAL CODE ANN. § 46.01(3) (Vernon Supp. 2010).

happened to the "big gun," but later, when police arrived, she saw them retrieve the weapon from the house.

Beauchamp testified that, on the night in question, she saw Hutchings holding a gun. He was outside, near his girlfriend's car. Beauchamp also said she was not knowledgeable about guns and so could offer no further description. She did, though, say she had never seen that gun in the home shared by the two couples.

Seale responded to a report of an armed subject, and came to 100-A Thelma Court. While across the street from the duplex, he saw the silhouette of an individual holding a rifle in the duplex's window. Seale said he knew it was a rifle, and it appeared to be an assault rifle. Seale and his partner prepared to approach the duplex. Before they arrived or could knock on the door, an unarmed male exited, and the officers placed him on the ground. Seale entered the duplex and saw, leaning against a couch, an SKS rifle with a bayonet. Seale's testimony did not identify the male who exited the home or the two females inside. The testimony is not entirely clear, but the context of Seale's testimony suggests the residence in question was 100-A Thelma Court, where Hutchings and his brother lived with their girlfriends. Exactly when Seale saw the rifle, and whether he was in the doorway of the home or had entered the home, is disputed by Hutchings and we will address it when taking up his complaint about the trial court's denial of the motion to suppress.

7

It is true that neither Bell nor Beauchamp were shown a gun or picture of a gun to identify whether it was similar to, or the same as, the one they had seen Hutchings wield. But Bell did say that, as she spoke to police on their arrival, she saw, in a window, a person with a gun. She appears to be referring to the apartment or duplex where Hutchings lived. And when asked, she testified that she saw the "police recover the gun."

Hutchings claims there was no evidence the gun which Bell and Beauchamp saw Hutchings holding was operational. Seale testified he and the other officers on the scene had difficulty removing the magazine from the rifle. It is not necessary for the State to prove a firearm is operable. *Wright v. State*, 582 S.W.2d 845, 847 (Tex. Crim. App. [Panel Op.] 1979) (in proving use or exhibition of deadly weapon, where alleged deadly weapon is firearm, State need not prove firearm operational); *Walker v. State*, 543 S.W.2d 634, 637 (Tex. Crim. App. 1976) (.45 automatic pistol is "firearm," even if clip and firing pin missing); *Lewis v. State*, 852 S.W.2d 667, 669 (Tex. App.—Houston [14th Dist.] 1993, no pet.) (in prosecution for unlawful possession of firearm, not necessary for State to prove weapon operational).

The evidence was sufficient to support a finding Hutchings possessed a firearm.

Hutchings also argues the evidence was insufficient to prove he was a convicted felon at the time.[4] But, a certified copy of the judgment of Hutchings' prior felony was tendered and admitted into evidence without objection. And Hutchings admitted in open court that the prior

---

[4]Hutchings' argument asserts that the trial court did not approve a stipulation between the parties as required by Article 1.15 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005). We address that argument below.

8

conviction was his. The prior judgment, admitted into evidence, shows its date and the sentence from that conviction. Thus, the record contains sufficient information to establish this part of the State's case against Hutchings.

*(2)    Approval of a Waiver and Stipulation Was Not Necessary*

Before testimony began, the State and Hutchings told the trial court they had "arranged to stipulate" to Hutchings' prior felony conviction. Hutchings personally, after being asked by the trial court, acknowledged his prior felony conviction. The court then stated that it "approve[d] the stipulation." The State then offered Exhibit 1, a certified copy of a judgment convicting Hutchings of burglary of a habitation in May 2002. Hutchings, through his attorney, stated, "[W]e have stipulated to it and we have no objection to it." The judgment was received into evidence.

Hutchings complains, in his third point of error, that the trial court failed to comply with Article 1.15 of the Texas Code of Criminal Procedure in approving what is characterized as Hutchings' stipulation of evidence regarding his prior felony conviction. Article 1.15 requires, among other things, that if a defendant waives a jury trial, the State must still present evidence supporting a finding of guilt; adding that the evidence may be stipulated. TEX. CODE CRIM. PROC. ANN. art. 1.15. If stipulated testimony is to be relied on, though, the defendant must waive his or

9

her right to confront and cross-examine the witness or witnesses whose testimony is to be stipulated, as well as stipulate to the testimony or written statements of witnesses. *Id*. In such a case, the waiver of confrontation and examination of witnesses and consent to stipulate to evidence must be approved by the trial court in writing and filed in the papers of the cause. *Id*. Hutchings complains that the record does not contain a written approval by the trial court of Hutchings' waiver and consent as required by Article 1.15 of the Texas Code of Criminal Procedure. He is correct that there is no such action by the trial court, but he is incorrect in claiming it is required in this case.

Hutchings signed a document acknowledging his waiver of a jury trial. The document is a form fully titled "Waiver of Jury Trial and Consent to Stipulation of Testimony." The form, in its original state, contains statements indicating the signer waives a jury trial; waives the right for the defendant's attorney to have ten days' preparation for trial; waives reading of the indictment; stipulates to evidence in the case; and waives the appearance, confrontation, and cross-examination of witnesses. In this particular document, all of the statements except that waiving a trial by jury are struck through and initialed. The document, so amended, bears the signature of Hutchings, his attorney, the prosecutor, and the trial court.

Hutchings claims error because the trial court failed to approve, in writing, Hutchings' waiver and consent, as required by Article 1.15. If Hutchings were correct, this would, by itself, be reversible error. *See Messer v. State*, 729 S.W.2d 694, 698 (Tex. Crim. App. 1986). In this

10

situation, however, compliance with Article 1.15 was not required, since no stipulated testimony was admitted or relied on. After the parties discussed the "stipulation," the State tendered into evidence the certified copy of that judgment, reflecting Hutchings' conviction for burglary of a habitation May 15, 2002.[5] Hutchings stated he had no objection to admission of the judgment, and the trial court accepted it into evidence. The trial court further asked Hutchings if that conviction was his, to which Hutchings answered affirmatively. Here, the requisites of Article 1.15 are immaterial because evidence was properly admitted that established the "felony" part of the State's burden here.

In support of his argument, Hutchings relies on *Lopez v. State*, 708 S.W.2d 446 (Tex. Crim. App. 1986). The trial court overruled Lopez's motion to suppress; at that hearing, the only evidence offered was from a police officer describing the circumstances of Lopez's arrest. After the suppression was denied, Lopez waived a jury trial and the case was heard by the court. The parties agreed the only evidence would be that from the suppression hearing, and a stipulation of evidence which stated that, if the State were to call a chemist to testify, the chemist would present evidence that the substance with which Lopez was charged with possessing was heroin. *Id.* at 448. The stipulation of evidence was signed by the defendant, his attorney, and the prosecutor,

---

[5]That judgment sentenced Hutchings to nine years in the Texas Department of Criminal Justice–Institutional Division. Although Hutchings does not dispute this point, a sentence of nine years pronounced in May 2002 places the instant offense date, September 23, 2009, within the five-year span proscribed in Section 46.04(a) of the Texas Penal Code. TEX. PENAL CODE ANN. § 46.04(a).

but not the trial court.   The Texas Court of Criminal Appeals found Article 1.15 had not been complied with and reversed Lopez's conviction.   *Id.* at 449.[6]

Hutchings' case bears a significant distinction from *Lopez*.   In *Lopez*, the faulty stipulated testimony was the only proof of a crucial piece of evidence.   Here, evidence establishing the crucial element, Hutchings' status as a felon was admitted without objection, independent of any stipulated testimony.   We overrule Hutchings' third point of error.

*(3)*     *Allowing Police Evidence Regarding the Firearm Was Harmless, Even If Error*

In his fourth and fifth points, argued together, Hutchings complains of the trial court's overruling his motion to suppress evidence, then noting on the docket sheet, "Even if granted – Evid beyond Reasonable Doubt."   The motion to suppress was decided after presentation of the State's witnesses.

Hutchings' motion to suppress sought to suppress any firearm obtained by Longview police and any testimony from the police about the firearm.   No weapon was offered into evidence by the State, and hence no error can be shown as to the failure to suppress the weapon itself.   *Stiggers v. State*, 506 S.W.2d 609, 611 (Tex. Crim. App. 1974).

Seale provided testimony about the rifle gathered from two different sources.   On one hand, he testified that, while standing across the street from the duplex, he saw, silhouetted in a

---

[6]The court in *Lopez* found the error fundamental and remanded the cause to the trial court.   Later, the Texas Court of Criminal Appeals found this type of error to be trial error, as opposed to fundamental error, and therefore did not preclude a retrial.   *Messer*, 729 S.W.2d at 698.

window of the duplex, an individual holding an assault rifle. On the other hand, he also testified about the rifle he found inside the duplex, just before he entered, just after he entered, or as he entered the duplex. Seale's testimony about the silhouetted man holding the assault rifle was clearly admissible. It is his testimony describing the gun inside the duplex that is the real issue here.

We reserve any discussion about what the trial court could have concluded regarding exactly where Seale was standing when he first saw the rifle "in plain view" inside the duplex, or what it could have concluded regarding the officer's justification for entry into the duplex. The reason we need not address those matters is that the evidence is tangential; Seale's testimony does not place a rifle in Hutchings' hands. Therefore, even if it was error to admit Seale's testimony about finding the gun inside the duplex, any such error was harmless.

We also find no error in the trial court's entry on its docket sheet stating that it had overruled the suppression motion, but "Even if granted – Evid beyond Reasonable Doubt." That is absolutely consistent with our view that the evidence in question was tangential and of much lesser importance than the direct evidence from Bell and Beauchamp placing the rifle in Hutchings' hands. We overrule Hutchings' fourth and fifth points of error.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

13

Date Submitted:    December 20, 2010
Date Decided:      January 7, 2011

Publish

14