**MODIFY and AFFIRM; and Opinion Filed October 25, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01345-CR
### No. 05-17-01346-CR

**CARLOS NAVARRO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-24050-U & F17-24053-U**

## MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

A jury convicted Carlos Navarro of aggravated robbery and unlawful possession of a firearm. During the punishment phase, Navarro pleaded true to the enhancement paragraph alleged in each indictment. The jury found each enhancement paragraph true and assessed punishment of twenty-five years' imprisonment on the aggravated robbery offense and twelve years' imprisonment and a $2,000 fine on the unlawful possession of a firearm offense. In three points of error, Navarro complains the evidence was insufficient to support the convictions. We modify the trial court's judgments to reflect Navarro's plea and the jury's finding on each alleged enhancement. As modified, we affirm the trial court's judgments.

## Background

On February 19, 2017, Ronald Luce stopped at a McDonald's restaurant in Garland to buy a cup of coffee. In the parking lot was a car that had its hood raised, and Luce thought "they might have been having car trouble." Luce parked his truck two parking spots away from the car. There were no vehicles parked between Luce's truck and the car.

As Luce came out of McDonald's with his coffee, he saw two men and a woman by the car. The woman stopped Luce and asked if he would give her a ride. After Luce refused, the back door of the car "almost immediately" opened, and Luce saw Navarro[1] in the back seat, aiming a rifle at him. Based on the woman asking for a ride and the car being "broken down," Luce thought "they wanted [his] truck."

Navarro got out of the car, and Luce slowly backed toward his truck. As Navarro came around the front of the truck, Luce "started moving pretty fast" because he wanted to get inside the truck before Navarro reached him. After Luce got inside of the truck, Navarro stood outside the driver-side door of the truck with his chest and the rifle against the door. Although Navarro was saying something, Luce could not understand him. Luce backed up slowly and, when Navarro moved out of the way, drove away. According to Luce, he was "pretty nervous" and the encounter felt "life-threatening."

Joe Ramos was in the drive-through of a Wendy's restaurant next to McDonald's when he saw Navarro pointing a "firearm" at a man inside a truck. Ramos thought a robbery was occurring and was "scared for the man." According to Ramos, the man looked terrified, was real pale, and appeared to be "scared for his life." Ramos did not see Navarro[2] take anything from the man in the truck. Ramos called 9-1-1 to report the incident. During the 9-1-1 call, Ramos described the

---

[1] Luce identified Navarro in court as the man holding the weapon.

[2] Ramos identified Navarro in court as the man holding the weapon.

weapon as a "sawed-off shotgun." Ramos also described Navarro and the clothes he was wearing to the 9-1-1 operator.

According to Ramos, after the man in the truck "drove off real fast," Navarro got into the car that had its hood raised and began moving around. When Navarro got out of the car, Ramos saw that he had put the weapon down his pants. Ramos testified Navarro began walking through the parking lot "like he had a broken leg" because he could not bend his leg with the gun down his pants. Navarro was walking "as fast as he could." Ramos watched Navarro walk toward a Walmart across the street. As Navarro approached a black Jeep in the parking lot, he hit the window of the Jeep with his hand and tried to pull the rifle out of his pants.

While Jose Gonzalez was sitting in the drive-through at McDonald's, he saw a car in the parking lot with its hood and trunk open. A woman was sitting in the back seat on the passenger side with the door open. Gonzalez saw an "older gentleman" come out of McDonald's with a cup of coffee and walk toward a pickup truck that was parked two or three spaces from the car. When the man was behind the truck, the lady from the car approached him. Although Gonzalez could not hear the conversation, the man kept shaking his head "no."

The woman began walking back toward the car that had its hood raised. When she was about halfway to the car, Gonzalez saw a "young man" get out of the back seat of the car on the driver's side holding a long rifle. The young man ran in front of the truck with the gun "kind of halfway up." As he did so, the woman tried to open the door on the passenger side of the truck. The older man walked as fast as he could to the driver's side, got in the truck, and drove away. Gonzalez did not see anybody take anything from the older man.

Gonzalez saw the young man with the weapon start walking across the street toward Wendy's. As Gonzalez went through the drive-through, he lost sight of the man. When Gonzalez

drove around the side of McDonald's he saw the man with the gun walking in the Walmart parking lot.

Garland Police Officers Todd Hall, Bobby Taylor, and Kevin Mock responded to Ramos's 9-1-1 call. Officer Hall testified that when he arrived he learned Navarro was still at large and "had just tried to rob somebody and take their vehicle." Officers Hall and Mock drove into the Walmart parking lot looking for Navarro. Officer Mock saw that Navarro was wearing blue latex gloves and walking "kind of stiff legged." After Navarro was detained, the officers removed an SKS rifle from his pants. The magazine of the rifle was loaded with ammunition and there was a round in the chamber. Officer Hall testified the external safety on the rifle was set to "fire." The rifle, magazine, and ammunition were all admitted at trial.

Neither Officer Mock nor Officer Hall took the rifle recovered from Navarro to a gun range to fire it. They also did not have the rifle examined by a gunsmith to determine if it was a functional firearm. However, in Officer Mock's opinion, based on "the way it was at when we found it," the rifle was "serviceable."

In Officer Mock's opinion, someone wearing blue latex gloves and carrying an SKS rifle had either robbed someone or was planning to rob someone. According to Office Mock, Navarro appeared "intoxicated or high on something or crazy," but was able to communicate. Officer Hall agreed that Navarro could have been intoxicated.

Mike Aman, an investigator with the Dallas County District Attorney's Office, testified he compared fingerprints he obtained from Navarro with fingerprints on a June 4, 2013 felony conviction for criminal mischief. In Aman's opinion, the fingerprints were from the same person.

**Standard of Review**

Navarro challenges the sufficiency of the evidence to support the convictions for unlawful possession of a firearm and aggravated robbery. We review the sufficiency of the evidence under

the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). We consider whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We must defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Zuniga*, 551 S.W.3d at 732 (quoting *Jackson*, 443 U.S. at 319). When there is conflicting evidence, we presume the factfinder resolved the conflict in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Zuniga*, 551 S.W.3d at 733. We may not substitute our judgment for the factfinder's determinations of credibility. *Jackson*, 443 U.S. at 319; *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence.").

"Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Zuniga*, 551 S.W.3d at 733; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett*, 552 S.W.3d at 262. Further, the State need not disprove every conceivable alternative to the defendant's guilt. *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015).

### Unlawful Possession of a Firearm Offense

In his first point of error, Navarro asserts the evidence is insufficient to support his conviction for unlawful possession of a firearm because the State failed to establish beyond a reasonable doubt that the rifle he was carrying was a "firearm" as defined by the penal code.

A person who has been convicted of a felony commits the offense of unlawful possession of a firearm if he possesses a firearm after conviction and before the fifth anniversary of his release from confinement or community supervision, whichever date is later, or after that period, at any location other than the premises at which he lives. TEX. PENAL CODE ANN. § 46.04(a). A "firearm" is "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." *Id.* 46.01(3).

Navarro argues the State failed to present evidence to establish the rifle met the statutory definition of a firearm or was operable when it was taken from him. However, in a prosecution for unlawful possession of a firearm, it is not necessary for the State to prove the firearm was presently operable or capable of firing. *Hutchings v. State*, 333 S.W.3d 917, 922 (Tex. App.—Texarkana 2011, pet. ref'd); *Thomas v. State*, 36 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Rather, a device "designed, made, or adapted" to perform in the manner described in section 46.01(3) of the penal code is a firearm. *Thomas*, 36 S.W.3d at 711. Even if the weapon is missing a clip, firing pin, or trigger, it is still a firearm under the statute. *See id.*; *see also Walker v. State*, 543 S.W.2d 634, 637 (Tex. Crim. App. 1976) (relying on definition of "firearm" in section 46.01(3) of penal code to find .45 caliber automatic pistol that was missing clip and firing pin was a firearm).

Officers Mock and Hall testified Navarro had an SKS rifle, the magazine of the rifle was loaded with ammunition, and there was a round in the chamber. Officer Hall also testified the external safety on the rifle was set to "fire." In Officer Mock's opinion, the rifle was "serviceable." The rifle, magazine, and ammunition were introduced into evidence and were viewed by the jury. Considering this evidence in the light most favorable to the verdict, we conclude a rational juror could have reasonably found the weapon in Navarro's possession was a "firearm." *See Bollinger*

*v. State*, 224 S.W.3d 768, 775–76 (Tex. App.—Eastland 2007, pet. ref'd) (concluding State was not required to prove that weapon was operable and that testimony describing weapons as "rifles," "high-powered rifles," and "shotguns," referring to weapons by brand and caliber, and describing some of weapons as "very expensive" was sufficient to support finding defendant had possession of firearm); *Thomas*, 36 S.W.3d at 711 (concluding that, even though trigger of weapon was missing, testimony that object was "gun" or "pistol," was loaded with four bullets, and while missing its grip, still had a butt, was sufficient to establish it was a firearm).[3]

We resolve Navarro's first point of error against him.

### Aggravated Robbery

In his second and third points of error, Navarro asserts the evidence is insufficient to support his conviction for aggravated robbery because the State did not prove beyond a reasonable doubt that he intended to obtain or maintain control of property or acted in the course of committing theft. Navarro specifically argues the evidence he intended to take Luce's truck was speculative; there was no evidence he demanded any property from Luce, had any prior plan to steal from Luce, or acted in the course of committing a theft; and because he was "high," he did not possess the requisite conscious objective or desire to engage in the conduct or cause the result.

As relevant to this appeal, a person commits aggravated robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another person in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. §§ 29.02(a)(2), 29.03(a)(2); § 31.03(a). A firearm is considered a deadly weapon. *Id.* § 1.07(a)(17)(A). "'In the course of committing theft'

---

[3] *See also Aylesworth v. State*, No. 03-12-00050-CR, 2013 WL 3929107, at *4 (Tex. App.—Austin July 24, 2013, no pet.) (mem. op., not designated for publication) (concluding jury could have inferred weapon was a firearm based on testimony shotgun was loaded with ammunition at time it was found, a shotgun shell was jammed in chamber, shotgun had barrel that was "cut off just in front of the fore-end, where you do the pump action of the shotgun," and shotgun was similar to type of weapon police officers use); *Price v. State*, No. 02-10-00149-CR, 2011 WL 946978, at *2 (Tex. App.—Fort Worth Mar. 17, 2011, no pet.) (mem. op., not designated for publication) (concluding evidence that a fully-loaded Winchester .30-30 caliber rifle was found in defendant's truck and defendant's admission to police officer that he had firearm in truck was sufficient to support conviction for unlawful possession of firearm).

means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id*. § 29.01(1). Theft is the unlawful appropriation of property with intent to deprive the owner of the property. *Id.* § 31.03(a).

Navarro argues there was no evidence he demanded or appropriated Luce's property or intended to steal Luce's property and the witnesses' testimony that he intended to rob Luce was based on speculation and cannot support a conviction. Although a jury is permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial," it may not "come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15; *see also Ramsey*, 473 S.W.3d at 809. However, proof of a completed theft is not required to establish the commission of a robbery, *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996), and "[i]ntent is almost always proven by circumstantial evidence," *Edwards v. State*, 497 S.W.3d 147, 157 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd)); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) ("Direct evidence of the requisite intent is not required[.]").[4] A jury may infer intent from circumstantial evidence, including the acts, words, and conduct of the accused. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009) (per curiam) ("[T]he requisite intent to rob may be inferred from circumstantial evidence, particularly the appellant's assaultive conduct."). Intent to obtain or maintain control of property may be inferred from the defendant's actions, and a verbal demand for property is not required. *Johnson v. State*, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976); *Edwards*, 497 S.W.3d at 159. Further, a jury may also reasonably infer guilt when the defendant's actions, including

---

[4] *See also Armstrong v. State*, No. AP-75,706, 2010 WL 359020, at *3 (Tex. Crim. App. Jan. 27, 2010) (not designated for publication) ("The intent to steal may be inferred from actions or conduct.").

flight, demonstrate a consciousness of guilt. *See Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989); *Santiago v. State*, 425 S.W.3d 437, 444 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).[5]

Viewed in the light most favorable to the verdict, the evidence established Navarro was in the back seat of a car parked in the McDonald's lot with its hood and trunk raised. A woman got out of the car and asked Luce for a ride. After Luce refused, Navarro opened the back door of the car and pointed a rifle at Luce. Navarro got out of the car and, still holding the rifle, approached Luce. After Luce got into his pickup truck and locked the doors, Navarro stood at the window on the driver's side, saying something to Luce, and the woman tried to open the passenger-side door. Luce, Ramos, and Gonzales all thought Navarro was trying to take Luce's truck. After Luce drove away, Navarro placed the rifle in his pants and started walking away from McDonald's through the Walmart parking lot. In the Walmart parking lot, Navarro approached a black Jeep and hit its window with his hand while attempting to remove the rifle from his pants. When Navarro was arrested, he was not only in possession of an SKS rifle, but was also wearing blue latex gloves which, in Officer Mock's opinion, indicated that Navarro had just robbed, or intended to rob, someone. Based on these facts, we conclude a rational jury could have reasonably inferred Navarro was acting "in the course of committing theft" with the "intent to obtain or maintain control" of Luce's truck.

Finally, Navarro asserts he did not possess the requisite mental state to commit aggravated robbery because he was "high" at the time of the incident. However, voluntary intoxication is not a defense to the commission of a crime, *see* TEX. PENAL CODE ANN. § 8.04(a), and cannot negate the applicable culpable mental state for an offense, *Sakil v. State*, 287 S.W.3d 23, 28 (Tex. Crim. App. 2009); *Williams v. State*, 502 S.W.3d 262, 269 (Tex. App.—Houston [14th Dist.] 2016, pet.

---

[5] *See also Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt.").

ref'd) ("The Court of Criminal Appeals has repeatedly rejected attempts to use evidence of voluntary intoxication to rebut or disprove a defendant's *mens rea*.").[6]

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude a rational juror could have reasonably found Navarro used a deadly weapon, a rifle, to place Luce in fear of imminent bodily injury or death during an attempt to steal Luce's pickup truck. Accordingly, the evidence is sufficient to support Navarro's conviction for aggravated robbery. We resolve Navarro's second and third points of error against him.

## Modification of Judgment

The indictment in each case contains an enhancement paragraph, the reporter's record reflects Navarro pleaded true to each alleged enhancement, and the trial court instructed the jury in the punishment phase charge in each case to find Navarro guilty of the alleged enhancement. However, the judgment in each case reflects there was neither a plea to nor a finding on the alleged enhancement.

When the record provides the necessary information to correct inaccuracies in the trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (courts of appeals have authority to modify a judgment); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet ref'd) (appellate court's authority to modify incorrect judgments "is not dependent upon the request of any party"). Accordingly, we modify the judgment in each case to reflect Navarro pleaded true to the alleged enhancement and the jury found the alleged enhancement to be true.

---

[6] *See Perkins v. State*, No. 05-17-00288-CR, 2018 WL 2252420, at *3 (Tex. App.—Dallas May 17, 2018, no pet.) (mem. op., not designated for publication) ("Voluntary intoxication does not negate the culpable mental state of a crime.").

–10–

As modified, we affirm the trial court's judgments.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

171345F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CARLOS NAVARRO, Appellant

No. 05-17-01345-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F17-24050-U.
Opinion delivered by Justice Fillmore, Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The sections of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph" are modified to state "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of October, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CARLOS NAVARRO, Appellant

No. 05-17-01346-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F17-24053-U.
Opinion delivered by Justice Fillmore,
Justices Lang and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The sections of the trial court's judgment titled "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph" are modified to state "True."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 25th day of October, 2018.