**Opinion filed January 31, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00036-CR

_____

## NOLBERTO ORTEGA, JR. A/K/A ALBERT ORTEGA, JR. A/K/A NOLBERT ORTEGA, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR14715**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant of unlawful possession of a firearm by a felon and, after it found two enhancement paragraphs alleged in the indictment to be true, assessed his punishment at confinement for eighty-five years. The trial court sentenced him accordingly. Appellant brings fours issues on appeal. In his first issue, Appellant challenges the sufficiency of the evidence. In his second issue,

Appellant contends that the trial court erred when it denied his requested jury instruction on the defense of a third person. In his third issue, Appellant asserts that the trial court erred when it failed to sua sponte charge the jury on the defense of necessity. In his fourth issue, Appellant argues that he received ineffective assistance of counsel. We affirm.

On the date of the alleged offense, Sarah Bass was in her house when she heard a "loud pop" that sounded like a gunshot. The "loud pop" sounded like it came from across the street; Appellant's mother-in-law lived across the street from Bass. When Bass heard the loud pop, she looked through her dining room window and saw Appellant standing near his mother-in-law's house. Bass saw Appellant with a gun in his right hand; Appellant was pointing the gun at the ground. She described the gun as a "pistol." Bass also saw a man holding both his hands up in the air as he backed away from Appellant. Bass called 9-1-1.

After the police arrived, Sergeant Mike Stone of the Stephenville Police Department talked to Appellant. Appellant denied that he had fired a gun. He told Sergeant Stone that the other man was Gilbert Cedillo. The police found Cedillo's girlfriend (Amanda Limones), her daughter, and Appellant's two-year-old daughter inside Appellant's mother-in-law's house. Appellant told Sergeant Stone that Cedillo had been acting crazy all morning. According to Appellant, Cedillo started to argue with him and Limones while they were outside the house. Cedillo threatened to kill Appellant because Cedillo believed that Appellant was an informant. Appellant explained that, in light of Cedillo's behavior, he needed to protect his daughter from Cedillo. When Sergeant Stone asked where the weapon was, Appellant said that it was in the house.

Sergeant Stone later confiscated the pistol.[1]  The pistol was unloaded and did not have a firing pin.  Appellant told Sergeant Stone that "Craig Wells" (a friend of Appellant's) had given him the pistol because it did not work.  Although one could not fire the pistol, Sergeant Stone believed that it still constituted a firearm.  Sergeant Stone asked Appellant about his criminal history.  Appellant told Sergeant Stone that he had been convicted of unlawful possession of a firearm by a felon and that he was currently on parole for that offense.  Appellant said that he knew that he was not allowed to have a gun, but he repeatedly emphasized that the pistol in question could not fire and was inoperable.

Craig William Wells testified that Appellant had come to Wells's house earlier on the day of the incident.  Appellant's daughter, Cedillo, Limones, and Limones's daughter were with Appellant, but they stayed outside in Appellant's pickup while Appellant went into the house.  Wells described Appellant as "scared" and "concerned."  Wells testified that Appellant said that Appellant needed something to use as a "scare tactic" or "bluff" to protect himself and his daughter from Cedillo.  Wells showed Appellant two guns: a functional revolver and an inoperable pistol.  When Wells offered Appellant the functional revolver, Appellant refused to take it.  According to Wells, Appellant said that he could not possess a firearm because he was a felon.  Instead, Appellant specifically requested the inoperable pistol.  At trial, Wells described the pistol as a "trotline weight," stated that it was not loaded and did not have a firing pin, and claimed that it was "not even a gun really."  While Appellant and Wells were inside, Wells could hear Cedillo outside shouting loudly, telling Appellant to "hurry up."  Wells explained that Cedillo was acting crazy.  Cedillo later came inside, picked up the operable revolver, and loaded it.  Wells stated that Cedillo took the gun outside because Cedillo wanted

---

[1]The firearm in question is a Jennings Bryco Model 59, 9mm semiautomatic pistol.

to shoot it. Appellant then grabbed the inoperable pistol and headed outside with Wells. When they went outside, however, Cedillo was in Appellant's pickup with the others. Wells got Cedillo to step outside the pickup and retrieved the revolver from Cedillo after Wells let him shoot at a trash barrel in the backyard. Afterwards, Wells went back inside his house, and Appellant drove everyone, including Cedillo, back to Appellant's mother-in-law's house.

Appellant called Steven Lloyd Smith, a firearms expert, as a witness. Smith testified that he examined the pistol and determined that it was "missing eight components that comprise[d] the entire firing mechanism."[2] After Smith explained to the jury the parts that were missing, Smith testified that it would take him "about an hour" to make the gun operable if he had the assembly manual and all the parts available. Without these parts, he stated, no one could fire it. On cross-examination, Smith concluded that, even in its current inoperable condition, the pistol still legally constituted a firearm.

In Appellant's first issue, he contends that the evidence was legally insufficient to support his conviction for unlawful possession of a firearm by a felon. Specifically, he asserts that the State failed to prove beyond a reasonable doubt that the object he carried was a "firearm." With respect to his sufficiency argument, Appellant does not dispute any other element of the charged offense.

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could

---

[2]Smith testified that the pistol lacked the following components: takedown button, sear, sear spring, safety, safety spring, firing pin, firing pin spring, and cam.

have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Zuniga*, 551 S.W.3d at 732. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

A person who has been convicted of a felony commits the offense of unlawful possession of a firearm if he possesses a firearm (1) after conviction and before the fifth anniversary of his release from confinement or release from supervision under community supervision, parole, or mandatory supervision, whichever date is later, or (2) after that period, at any location other than the premises at which he lives. TEX. PENAL CODE ANN. § 46.04(a) (West 2011). Under the Texas Penal Code, a "firearm" is defined as "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use." *Id.* § 46.01(3) (West Supp. 2018).

Appellant contends that the "object in question cannot rationally be deemed a firearm for the statute's purposes." Appellant's sufficiency argument centers on the interpretation of the statutory definition of "firearm." According to Appellant, this court should not adopt the plain meaning of "firearm" because it will lead to absurd results that the legislature could not have possibly intended. He argues that, under this definition, when taken "to its logical extreme," a felon who possesses "any fraction of what was initially designed as a firearm would be in violation" of the unlawful-possession statute. He explains further that, "at some point[,] a machine is

5

missing so many integral parts as to no longer be a specimen of the machine it once was." Because the pistol in this case was missing "the entire firing mechanism," which in turn made the firearm inoperable, Appellant argues that to hold that the pistol still constitutes a "firearm" leads to an absurd result. We disagree.

We conclude that a literal application of the plain language of the definition of firearm does not lead to an absurd result. Contrary to Appellant's assertions, a plain reading of Section 46.01(3) does not support his argument that the possession of "any fraction" of a device will constitute possession of a firearm. Rather, based on the plain-meaning interpretation of "firearm," as it is defined, only a "*device* designed, made, or adapted" to perform in the manner described in the statute or a "*device* readily convertible to that use" will qualify as a firearm. *See Id.* § 46.01(3) (emphasis added). Importantly, Section 46.01(3) does not indicate that the mere possession of *any part of a device* alone is considered possession of a firearm (i.e., only possession of the firing pin). The firing pin itself, or any other part of a firearm in isolation, is not a device designed to expel a projectile through a barrel, nor is it a device readily convertible for that use. Accordingly, there is no danger that, based on the plain language of Section 46.01(3), the possession of any fraction of an object that once was part of a firearm will still be deemed possession of the firearm itself.

Moreover, to the extent that Appellant's argument focuses on the inoperability of the firearm, we have already determined, as have other courts, that it is not necessary for a device to be operable at the time of the offense for it to be considered a firearm. *See, e.g.*, *Walker v. State*, 543 S.W.2d 634, 637 (Tex. Crim. App. 1976) (holding that an automatic pistol that was missing the clip and firing pin at the time of the offense constituted a firearm); *Aylesworth v. State*, No. 03-12-00050-CR, 2013 WL 3929107, at *3–4 (Tex. App.—Austin July 24, 2013, no pet.) (mem. op., not designated for publication) (holding that a firearm need not be operable or capable of firing at the time of possession); *Hutchings v. State*, 333 S.W.3d 917, 922

6

(Tex. App.—Texarkana 2011, pet. ref'd) ("It is not necessary for the State to prove a firearm is operable."); *Bollinger v. State*, 224 S.W.3d 768, 775 (Tex. App.—Eastland 2007, pet. ref'd) ("The State was not required to prove that any of the firearms were operable."); *Grantham v. State*, 116 S.W.3d 136, 144 (Tex. App.—Tyler 2003, pet. ref'd) ("[T]he State need not prove the weapons were capable of being fired. The law does not incorporate such a requirement."); *Thomas v. State*, 36 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding that Section 46.01(3) does not require that a firearm be capable of firing at the time of the offense).

We hold that, in accordance with the plain meaning of Section 46.01(3), even if a handgun is missing key components, such as the firing pin and its related parts and springs as in this case, the absence of such components does not divest the handgun of its status as a firearm. *See Navarro v. State*, No. 05-17-01345-CR, 2018 WL 5291982, at *3 (Tex. App.—Dallas Oct. 25, 2018, no pet.) (mem. op., not designated for publication) (holding that a device missing a clip, firing pin, or trigger is a firearm under the statute); *Moore v. State*, No. 14-00-00110-CR, 2001 WL 777059, at *2 (Tex. App.—Houston [14th Dist.] July 12, 2001, pet. ref'd) (not designated for publication) (holding that a Bryco .380 pistol was a firearm within the meaning of Section 46.01, "although its spring and firing pin were loose"); *Thomas*, 36 S.W.3d at 711 (holding that, even if the clip and firing pin are missing at the time of the offense, a pistol is still a firearm under Section 46.01(3)); *see also Walker*, 543 S.W.2d at 637 (same).

The evidence in this case sufficiently establishes that Appellant possessed a "firearm." Bass explained that she saw Appellant holding a "pistol." Additionally, Appellant later told the police that he had a "gun." The State introduced the pistol into evidence, and the jury viewed it. Although the pistol was inoperable, the record reflects that the only component missing from the pistol was the firing mechanism,

which consists of eight separate parts. Despite the absence of the firing mechanism, Smith, Appellant's own firearms expert, testified that, based on his training and experience, the pistol that Appellant possessed was a firearm. Moreover, Sergeant Stone testified that, with the firing pin, the pistol could be made to fire and that, even without the firing pin, the pistol was a firearm. When we consider this evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have reasonably found that the object in Appellant's possession was a firearm. Accordingly, we overrule Appellant's first issue.

In Appellant's second issue, he contends, in the alternative, that, if there is legally sufficient evidence that the inoperable pistol was a firearm, the trial court erred when it denied his request for a jury instruction on the defense of a third person. Specifically, he argues that he was entitled to this instruction because he only possessed the pistol and used the threat of force to protect his daughter.

We review a trial court's decision to refuse a request for an instruction on a defensive issue for an abuse of discretion. *Bocanegra v. State*, No. 11-12-00038-CR, 2014 WL 2767175, at *4 (Tex. App.—Eastland June 12, 2014, no pet.) (mem. op., not designated for publication). When the evidence at trial raises a defensive issue, and the defendant properly requests a jury instruction on that issue, the trial court must submit the issue to the jury. *See Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by the jury, would support a rational inference that the element is true. *See Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). Whether the record contains such evidence is a question of law, and we view the evidence in the light most favorable to Appellant. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

8

Defense of a third person is a defensive issue that is subject to the doctrine of confession and avoidance. *Battles v. State*, No. 14-15-00775-CR, 2017 WL 89401, at *4 (Tex. App.—Houston [14 Dist.] Jan. 10, 2017, pet. ref'd) (mem. op., not designated for publication). Under this doctrine, "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Shaw*, 243 S.W.3d at 659; *see also Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) ("[T]he doctrine requires an admission to the conduct, which includes both the act or omission and the requisite mental state."). Accordingly, a defendant is not entitled to a jury instruction on defense of a third person if, through his own testimony or the testimony of others, he claims that he did not commit the charged offense.

Here, Appellant was charged with "intentionally and knowingly possess[ing] a firearm." He pleaded "not guilty" to the charge and the case proceeded to trial. Throughout trial, including his opening statement, closing argument, cross-examination, and his own evidence, Appellant consistently maintained that he lacked the requisite mental state to commit the charged offense. Although Appellant did not testify, it is apparent from the record that Appellant believed he did not *intentionally or knowingly* possess a "firearm" because he purposefully possessed a pistol that was inoperable instead, which Appellant believed was not a firearm. Indeed, during his conversation with Sergeant Stone, Appellant stated that, while he knew that he was not allowed to have a firearm, the pistol he possessed was inoperable. In her opening statement, Appellant's trial counsel explained that, although Appellant technically possessed a firearm, he "did not *intend* to have a firearm," and she urged the jury to pay close attention to the elements of "intentionally" and "knowingly." During cross-examination of the State's witnesses, trial counsel elicited testimony that the pistol that Appellant possessed

9

did not have a firing pin, was not loaded, and could not be fired in its current configuration. Moreover, the defensive evidence established that Appellant specifically requested the pistol in question because it was inoperable, that he only wanted to use something as a "scare tactic" or "bluff" to protect his daughter, and that he refused to possess a functional firearm because he knew that he could not legally possess one. Appellant downplayed the pistol as being an actual firearm and indicated that the pistol was missing the entire firing mechanism—a total of eight separate components. The evidence also showed that it would have taken "about an hour" to make the pistol fully operational. Appellant's trial counsel reiterated during closing arguments that, because Appellant possessed an inoperable pistol that he believed was not a firearm, Appellant never intended to possess a firearm in violation of the unlawful-possession statute.

Thus, because the record does not show that Appellant either admitted or, through defensive evidence, essentially admitted to all of the elements of the charged offense, specifically the culpable mental state, Appellant was not entitled to an instruction on the defense of a third person. Therefore, we conclude that the trial court did not abuse its discretion when it refused to provide the requested instruction. We overrule Appellant's second issue.

In Appellant's third issue, he contends that the trial court erred when it failed to sua sponte charge the jury on the defense of necessity. Specifically, he argues that his possession of a firearm was immediately necessary to avoid imminent harm to himself and his daughter. However, because no rule or statute requires the trial court to give this type of instruction sua sponte, Appellant was required to preserve this alleged error at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); TEX. R. APP. P. 33.1; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013) ("A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has

procedurally defaulted any such complaint."). Here, Appellant failed to request such an instruction or object to its absence from the jury charge. Therefore, Appellant has failed to preserve this issue for appellate review.

Even if we assume that Appellant preserved error, we conclude that the trial court did not err when it failed to instruct the jury on the defense of necessity. As with the defense of a third person, the confession and avoidance doctrine also applies to the defense of necessity. *Juarez*, 308 S.W.3d at 399. Because the record does not reflect that Appellant admitted or essentially admitted to every element of the charged offense, Appellant would likewise have been precluded from an instruction on the defense of necessity. Accordingly, the trial court did not err when it failed to sua sponte provide such an instruction. We overrule Appellant's third issue.

In Appellant's fourth issue, he contends that he received ineffective assistance of counsel. We review a claim of ineffective assistance of counsel under the *Strickland* standard, which is a two-part analysis that includes a performance prong and a prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the performance prong, Appellant must show that trial counsel's performance was deficient. *Id.* For the prejudice prong, Appellant must show that there is a reasonable probability that the outcome would have differed but for trial counsel's errors. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 694. A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Appellate review of defense counsel's performance is highly deferential, and we presume that counsel's actions fell within the wide range of reasonable and professional assistance. *Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd).

11

To overcome this presumption, Appellant's claim of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). "Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Thompson*, 9 S.W.3d at 813–14. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). If trial counsel has not had an opportunity to explain the challenged actions, then we will not conclude that those actions constituted deficient performance unless they were so outrageous that no competent attorney would have engaged in them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Appellant asserts that his trial counsel provided ineffective assistance for two reasons. First, Appellant argues that he received ineffective assistance because trial counsel failed to stipulate to his status as a felon, for purposes of the charged offense. Because of trial counsel's failure to stipulate, Appellant argues, trial counsel allowed the State to introduce the details of the prior felony offense (which also was for unlawful possession of a firearm by a felon). Specifically, Appellant cites to the State's opening statement during the guilt/innocence phase of trial, where the State informed the jury that Appellant had previously committed the same offense, received a fifty-year sentence in 1989, and was currently within the period of supervision on parole for that offense.

Here, the record is silent as to any potential trial strategy that trial counsel could have employed. Appellant did not assert his claim of ineffective assistance in a motion for new trial; thus, trial counsel has not had an opportunity to explain her strategy. Therefore, on this record, Appellant has failed to overcome the strong presumption of reasonable assistance. But even if we assume that trial counsel was deficient in failing to stipulate to Appellant's status as a felon, we conclude that trial counsel's performance did not prejudice Appellant.

The second prong of *Strickland* requires that Appellant show prejudice that resulted from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, Appellant must prove that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.*

Here, even if trial counsel had stipulated to Appellant's prior felony offense, the evidence was sufficient to convict Appellant of the charged offense. Without the details of Appellant's prior felony, the evidence nevertheless established that (1) Appellant was a felon, (2) he undeniably intended to possess the inoperable pistol, and (3) although the pistol was inoperable, it constituted a "firearm," as defined in Section 46.01(3). Accordingly, there is no reasonable probability that the result of the proceeding would have been different had trial counsel stipulated to Appellant's prior felony conviction.

Second, Appellant argues that he received ineffective assistance because trial counsel failed to request a jury instruction on the defense of necessity. But as discussed above in our disposition of Appellant's third issue, Appellant would not have been entitled to this instruction because he failed to admit, or essentially admit,

to every element of the charged offense. Thus, even if trial counsel had requested such an instruction or objected to its absence in the jury charge, the trial court would not have erred if it had denied the instruction. We therefore hold that trial counsel's performance did not fall below an objective standard of reasonableness. Accordingly, we overrule Appellant's fourth issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


January 31, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.